IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JOHN DOE (an alias) ) <br> On behalf of himself and all others similarly ) <br> situated ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AVID LIFE MEDIA, INC. a corporation, and ) <br> AVID DATING LIFE, INC. d/b/a ASHLEY ) <br> MADISON ) <br> ) <br>     Defendants. ) <br> ) | CASE NO: <br><br> JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff John Doe ("Plaintiff") brings this Class action against Defendants AVID LIFE MEDIA, INC. and AVID DATING LIFE, INC., d/b/a Ashley Madison ("Defendants") on behalf of himself and all others similarly situated. Except as to his own actions, Plaintiff avers the following allegations upon information and belief of the investigation of his counsel and the facts that are a matter of public record:

**INTRODUCTION**

Plaintiff brings this class action as a result of Defendants failure to adequately protect AshleyMadison.com members' private personal and financial information from being disseminated to the public. Defendants allowed a group of hackers, known as "The Impact Team," to access, download, and make public Plaintiff's personal and financial information. Such personal information included, but is not limited to, the putative Class Members' names, addresses, credit or debit card information, the card's expiration date, and/or the card's security code, as well as how much each Class Member spent purchasing services at AshleyMadison.com.

1

The Plaintiff and putative Class Members assert claims against the Defendants for breach of federal statute, state statute, breach of contract, breach of implied contract, fraud, negligence, bailment, and conversion. Plaintiff and the Class he intends to represent seek to recover damages, including actual, statutory, punitive damages, and equitable relief, including injunctive relief to prevent the recurrence of this security breach and resulting injury, restitution, disgorgement and reasonable costs and attorneys' fees.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon this Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. §2707. This Court has supplemental jurisdiction over Plaintiff's and Class Members' state law claims under 28 U.S.C. §1367.

2. Further, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) because this case is a class action where the aggregate claims of all Members of the putative Classes are in excess of $5,000,000.00, exclusive of interest and costs, and many of the Members of the putative Classes are citizens of different states than Defendant. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d).

3. Venue is properly set in this District pursuant to 28 U.S.C. §1391(b) since Defendant transacts business within this judicial district. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

## PARTIES

4.     Plaintiff John Doe is an adult male domiciled in Marion County, Alabama and is a citizen of Alabama. John Doe provided both personal and financial information to Defendants in order to access Defendants' services. John Doe's information was compromised as a result of Defendants' lack of adequate security measures. As a result of this compromise, Doe has suffered losses and damages in an amount not yet quantifiable.[1]

5.     Upon information and belief, Defendants Avid Life Media, Inc. and Avid Dating Life, Inc. are organized under Canadian law and their principal places of business are located in Toronto, Canada.

## FACTS COMMON TO ALL COUNTS

6.     Ashley Madison is a Canadian-based online dating service and social networking service marketed to people who are married or in a committed relationship. Its slogan is "Life is short. Have an affair." Its website, AshleyMadison.com, is owned by Avid Dating Life, Inc., a subsidiary of Avid Life Media, Inc., both of which are privately held Canadian corporations.

7.     Defendants market AshleyMadison.com to consumers in the United States as well as fifty-two (52) other countries. In total, the website has approximately thirty-nine (39) million customers. It is rated the twentieth most popular adult website in the United States, and is marketed through television, radio, billboard, and internet advertisements.

8.     The website's business model is based upon credits, which users purchase in order to facilitate a contact with another member. Anyone is permitted to create a "free" account at

---

[1] At this time, Plaintiff brings this litigation under an alias to prevent public disclosure of his identity and to protect information highly sensitive and personal to him and to prevent further invasion of privacy. Plaintiff will disclose his identity to Defendants' counsel and/or this Court upon demand and pursuant to a protective order entered by the Court.

3

AshleyMadison.com, even someone who desired to create an account using a friend or acquaintance's email account. AshleyMadison.com does not verify emails to ensure that the person applying for an account was the actual owner of the offered email address.

9. On or about July 15, 2016, and at other times prior to this date, Defendants' customer databases were compromised, which resulted in personal information of the Plaintiff and Class Members being used, or at risk of being used, in fraudulent transactions around the world, as well as the disclosure to the public that each Class Member had an account with Ashley Madison.

10. Upon information and belief, the personal information of approximately 39 million subscribers was taken from Defendants, and Defendants' failure to protect the Plaintiff and Class Members credit/debit card information affected hundreds of thousands, if not millions of customers worldwide.

11. On or about July 19, 2015, The Impact Team made public that it possessed personal and financial information for AshleyMadison.com subscribers. The Impact Team team gave AshleyMadison.com an ultimatum – shut down the site or risk the release of all of your customers' personal and financial information.

12. AshleyMadison.com, who prides itself as a 100% discrete service and guarantees that member information is protected, did not heed The Impact Team's ultimatum, and on August 20, 2015, millions of current and former account holders at AshleyMadison.com had their personal and financial information released to the public.

13. Published reports indicate that the personal and financial information of millions of Defendants' current and former customers from around the United States has been compromised as a result of this data/security breach. The ongoing aftermath reveals that AshleyMadison.com

failed to follow common security protocols and lacked any meaningful policies and procedures related to the protection of customer data.

14.     Although Ashley Madison's lapse in any meaningful security protocols was/is a grave injustice and has caused damage to millions worldwide, it gets worse. AshleyMadison.com was not like other websites that allowed a user to delete one's account if he were dissatisfied or no longer used the account. Rather, AshleyMadison.com only allowed a member to either make his/her account invisible to the public or pay $19 dollars to have his/her account and all correlating information deleted forever. The Impact Team's recent revelations have revealed that this $19 service was a complete scam.

15.     Moreover, upon learning of the data/security breach, Defendants failed to notify the Plaintiff and/or the putative Classes within a reasonable time and failed to inform the Plaintiff and Classes of the nature and extent of the breach. As a result, Defendants deprived the Class Members of the ability to protect themselves and mitigate their damages to prevent further personal and financial injuries.

16.     The disclosure of Plaintiff's and the putative Class Members' private personal information, not to mention the fact that an AshleyMadison.com account existed, is likely to and has caused the Plaintiff and Class Members extreme emotional distress/embarrassment, disruption of/interference with Plaintiff's personal and social life, and/or economic loss.

17.     The disclosure of Plaintiff's and the putative Class Members' private financial information subjects the Classes to a heightened risk of fraud, fraudulent charges, and/or identity theft. Both the personal and financial information is at serious and ongoing risk of misuse because anyone with a computer can obtain this private information because of Defendants' failure to protect their customers' data.

5

18. If a member is unsatisfied or no longer interested in having an account with AshleyMadison.com, they are permitted to hide their account at no cost. However, if a member wants assurance that their account had been permanently erased, he/she must pay a $19 fee (referred to herein as "Paid-Delete"). The Paid-Delete option claimed to remove user profiles, all messages sent and received, site usage history, personally identifiable information and photos from the site. Unfortunately, the recent disclosures provided by The Impact Team reveal that the Paid Delete feature was a fraud, and all data existed and was recoverable.

### Account Creation

19. To create an account on AshleyMadison.com, users are required to select a username and password, personalize a greeting, indicate location (by country), zip code, date of birth, type of affair sought – the options provided are short term, long term, cyber affair/erotic chat, or other – height, weight, body type, ethnicity and email.

20. Below the box where users are asked to enter their "email,' the website promises: "This email will never be shown or shared."

21. The website also asks each user to upload a "discrete photo" and offers options of either placing a mask over the user's eyes on the photo or blurring the photo.

22. In the "Manage Profile" section, users may enter information relating to "My Intimate Desires" "My Perfect Match" and "My Personal Interests," among other information.

23. Upon information and belief, Defendants store the users' personal information they collect in an unencrypted format at the database level.[2] Despite these security threats that may have

---

[2] http://mashable.com/2015/08/20/ashleymadison-hack-security/ (last visited August 24, 2015)

even been internally discovered by Defendants' internal officers and/or directors, Defendants published on the internet a statement calling itself "the last truly secure space on the Internet."

### Allegations Specific to Plaintiff Doe

24. On or about July 2012, Plaintiff created an account with AshleyMadison.com. As part of the process of creating his account, Plaintiff created a username and password and entered his personal information into the website's system. Plaintiff subsequently purchased credits with his credit card and utilized Ashley Madison's services.

25. On August 21, 2015, Plaintiff Doe became aware that his information had been released to the public and had friends, customers, and neighbors apprise him of their awareness that he had an account with AshleyMadison.com. Plaintiff and his fiancée have also received countless embarrassing messages from friends and family on Facebook and through other social media forums.

26. Plaintiff was not in a relationship at the time he accessed the site, however, he is now in a committed relationship with his soon to be wife, and they have suffered much embarrassment and emotional distress as a result of Ashley Madison's failure to protect Plaintiff's private information.

### CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Fed. R. Civ. P., Rule 23, and seeks to represent the following National Classs and Alabama sub-Class:

    a. **National Class 1: All individuals in the United States who created an account at AshleyMadison.com, or had accounts created on their behalf, and whose information was downloaded and leaked to the public.**

7

    b. **National Class 2: All individuals in the United States who created an account at AshleyMadison.com and took advantage of the Paid-Delete function, and whose information was leaked to the public.**

Alternatively, if the Court determines that class certification is not feasible on a national basis:

    c. **Alabama Class 1: All individuals residing in Alabama who created an account at AshleyMadison.com, or had an account created on their behalf, whose information was downloaded and leaked to the public.**

    d. **Alabama Class 2: All individuals residing in Alabama who created an account at AshleyMadison.com and took advantage of the Paid-Delet function, and whose information was leaked to the public.**

28. The "Class Period" is from the date of the breach to date.

29. Excluded from the proposed Class are governmental entities, Defendants, officers, directors, and employees of Defendant, and the Judge assigned to this action and his staff.

30. This action has been brought and may properly be maintained as a class action under Rule 23 because it satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy:

    a. **Numerosity**: Individual joinder of the Class members would be wholly impracticable. There are in excess of thirty-nine (39) million individuals who created accounts with AshleyMadison.com and whose information was disclosed by The Impact Team.

    b. **Commonality**: There are questions of law and fact common for each Class that predominate over questions affecting only individual class members. The wrongs suffered and remedies sought are premised upon deceptive and

unlawful conduct on the part of all Defendants. The principal common issues include, but are not limited to, the following:

   a. Whether Defendants engaged in the wrongful or negligent conduct alleged herein;

   b. Whether Defendants' conduct was deceptive, unfair, and/or unlawful;

   c. Whether Defendants used reasonable security measures to protect its users and Class Members' personal and financial information

   d. Whether Defendants breached their duty to provide timely and accurate notice of the security breach to Plaintiff;

   e. Whether Defendants knew or should have known that its security measures were inadequate and vulnerable to cyber-attack;

   f. Whether Defendants misrepresented the security of their systems;

   g. Whether Defendants caused private facts about Plaintiff and Class Members to be publicly revealed;

   h. Whether Plaintiff and Class Members are entitled to recover actual damages, statutory damages, and/or punitive damages; and

   i. Whether Plaintiff and Class Members are entitled to restitution, disgorgement, and/or other equitable relief.

c. **Typicality**: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class Members were injured through the uniform misconduct described above and assert the same claims for relief.

d. **Adequacy of Representation**: Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's interests do not conflict with those of Class Members. Counsel who represent the Plaintiff are competent and experienced in litigating class actions, and will devote sufficient time and resources to the case and otherwise adequately represent the Class.

      e. **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affection only individual members of the Class. Even if it were economically feasible, requiring hundreds of thousands of injured plaintiffs to file individual suits would impose a high burden on the court system and almost certainly lead to inconsistent judgments. Alternatively, class treatment will present fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

31. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendants have acted or have refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

32. Finally, all members of the proposed Classes are readily ascertainable. Defendants, as well as the public at large, have access to addresses and other contact information for members of the Classes, which can be used to identify Class members.

## CAUSES OF ACTION

### COUNT ONE
### (Negligence)

33. Plaintiff repeats and realleges the preceding paragraphs as if fully stated herein.

34. Upon receiving Plaintiff's and Class Members' personal private information and financial information, Defendant had (and continues to have) a duty to exercise reasonable care in safeguarding and protecting member information from being accessed and/or stolen

10

35. Defendants also had a duty to timely disclose to the Plaintiff and Class Members that a data/security breach had occurred and that their personal information, as well as their financial information had been compromised, or was reasonably believed to be compromised.

36. Defendants also had a duty to put into place internal policies and procedures designed to detect and prevent the access to and/or dissemination of Plaintiff's and Class Members' personal information.

37. Defendants, by and through the above negligent acts and/or omissions, breached its duty to the Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding personal information in Defendants' possession, custody, and control.

38. Defendants, by and through the above negligent acts and/or omissions, further breached its duty to the Plaintiff and Class Members by failing to put into place meaningful internal policies and procedures designed to detect and prevent the unauthorized dissemination of Plaintiff's and Class Members' personal information.

39. Defendants, by and through the above negligent acts and/or omissions, breached its duty to timely disclose the fact that Plaintiff's and Class Members' private information had been or was reasonably believed to have been compromised.

40. Plaintiff's and Class Member's personal information was compromised and/or stolen as a direct and proximate result of Defendant's breach of its duties as set forth herein.

41. The Plaintiff and Class Members have suffered actual damages including, but not limited to, having their personal information disseminated to the public, incurring time and expenses in cancelling their debit/credit cards, activating new credit cards and re-establishing automatic payment authorizations from their new cards, and other economic and non-economic damages, including irrecoverable losses due to unauthorized charges on their credit/debit cards.

## COUNT TWO
### (Violation of the Federal Stored Communications Act, 18 U.S.C. §2702)

42. The Stored Communications Act ("SCA") provides consumers with redress if a company mishandles their electronically stored information ("ESI"). The SCA was designed, in relevant part, "to protect individuals' privacy interests in personal and proprietary information." S. Rep. No. 99-541, at 3 (1986)

43. Section 2702(a)(1) of the SCA provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1)

44. The SCA defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* at §2510(15)

45. Defendant provides an "electronic communication service to the public" within the meaning of the SCA because it provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications concerning their private financial information to transaction managers, card companies, and/or banks.

46. By failing to take commercially reasonable steps to safeguard private financial information, even after Defendants became aware that customers' personal information had been compromised, Defendants knowingly divulged customers' financial information that was communicated to financial institutions solely for customers' payment verification purposes, while in electronic storage in Defendants' payment system.

47. Section 2702(a)(2)(A) of the SCA provides that "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the content of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission form), a subscriber or customer of such service." 18 U.S.C. § 2702(a)(2)(A)

48. The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system." 18 U.S.C. § 2711(2).

49. An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications." 18 U.S.C. §2510(4).

50. Defendant provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photooptical or photoelectric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning the customer's private financial information.

51. By failing to take commercially reasonable steps to safeguard private financial information, Defendant knowingly divulged customers' financial information that was carried and maintained on Defendants' remote computing service solely for the customers' payment verification purposes.

52.     As a result of Defendants' conduct described herein and its violations of Section 2702(a)(1) and (2)(A), Plaintiff and putative Class Members have suffered injuries, including lost money and the costs associated with the need for persistent credit monitoring to protect against additional identity theft. Plaintiff, on his behalf and that of the putative classes, seek an order awarding themselves and the Classes the maximum statutory damages available under 18 U.S.C. § 2707 in addition to the cost for three (3) years of credit monitoring services.

## COUNT THREE
### (Violation of Alabama's Deceptive Trade Practices Act)

53.     Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

54.     Defendants violated the Alabama Deceptive Trade Practices Act, Ala. Code §8-19-5, and the substantially similar statutes of other states in which it conducts business by failing to properly implement adequate, commercially reasonable security measures to protect customers' private financial information.

55.     Pursuant to the Act, it is unlawful to:

> (2) Caus[e] confusion or misunderstanding as to the source sponsorship, approval, or certification of goods or services
>
> (7) Represent[] that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.
>
> (27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce

Ala. Code §8-9-15

56.     Defendants fraudulent and deceptive omissions and misrepresentations as to the security measures taken to protect Members' personal and financial information was intended to

deceive and induce the Plaintiff and Class Members' to rely on Defendants' misrepresentations that the his/her personal and financial information was secure.

57. Moreover, Defendants failure to delete member information after members paid $19 to ensure deletion is unconscionable.

58. Defendants' unlawful misrepresentations and omissions occurred in the course of conduct involving trade and commerce.

59. Defendants' unlawful misrepresentations and omissions were material because Plaintiff and the other putative Class Members would not have risked compromising their private financial information by using their debit or credit cards for Defendants' services. Plaintiff and the other putative Class Members would consider the omitted and misrepresented material facts important in making their purchasing decisions.

60. Defendants' unlawful misrepresentations and omissions damaged Plaintiff and other putative Class Members because Plaintiff and Class Members would not have chosen to expose their private financial information to a security breach and subsequent exploitation by Defendants.

## COUNT FOUR
### (Breach of Implied Contract)

61. Plaintiff repeats and realleges the preceding paragraphs as if fully stated herein.

62. When Plaintiff and the Class members provided their private personal and financial information to Defendants, they entered into implied contracts by which Defendants agreed to protect their personal and financial information and to timely notify them in the event of a data and/or security breach.

63. An implicit part of the agreement regarding Defendants' use of the personal and financial information was that Defendants would safeguard the information using reasonable or industry-standard means and would timely notify Plaintiffs in the event of a data breach.

64. Based upon this implicit understanding, Plaintiff and the Classes provided Defendants with their personal and financial information

65. Plaintiff and the Class Members would not have provided their personal and financial information to the Defendants had they known that Defendants did not have proper safeguards in place as promised or would not timely provide notice of a data/security breach.

66. The Plaintiff and Class Members fully performed their obligations under the implied contracts with the Defendants.

67. Defendants breached the implied contracts by failing to safeguard the Plaintiff's and Class Members' personal and financial information and by failing to provide them with timely and accurate notice when the personal and financial information was compromised by the data/security breach.

68. The losses and damages that Plaintiff and the Class Members have sustained were the direct and proximate result of Defendants' breaches of its implied contracts with them.

## COUNT FIVE
### (Breach of Contract)

69. Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

70. In exchange for payment of a fee, Defendants agreed to delete or erase a customer's personal and financial information from its systems/records

71. Class members paid the fee to have their information deleted or erased from Defendants' systems/records

72. Defendant breached the contract with the Class Members by not deleting or erasing their personal information as agreed.

73. Class Members had their personal and financial information stolen as a result of the data/security breach.

74. Class Members have been damaged as a direct and proximate result of Defendants' breach of contract.

## COUNT SIX
### (Bailment)

75. Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

76. Plaintiff and the Class Members delivered and entrusted their private information to Defendants for the sole purpose of receiving services from Defendants.

77. During the time of bailment, Defendant owed Plaintiff and Class Members a duty to safeguard this information properly and maintain reasonable security procedures and practices to protect such information. Defendants breached this duty.

78. As a result of this breach of duty, Plaintiff and the Class Members have suffered harm

79. Plaintiff seeks actual damages on behalf of himself and the Classes.

## COUNT SEVEN
### (Conversion)

80. Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

81. Plaintiff and Class Members were the owners of their private information. As a result of Defendants' wrongful conduct, Defendants have interfered with the Plaintiff and Class Members' rights to possess and control such property, to which thy had a superior right of possession and control at the time of conversion.

82. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class Members suffered injury, damage, loss, and harm and therefore seek compensatory damages.

83. In converting the Plaintiff's and Class Members' personal, private information, Defendants have acted with malice, oppression and in conscious disregard of the Plaintiff's and Class Members' rights. Resultantly, Plaintiff seeks an award of punitive damages on behalf of the Class.

## COUNT EIGHT
### (Fraud and Misrepresentation)
### (on behalf of National Class 2, or alternatively, Alabama Class 2)

84. Plaintiff adopts and realleges all preceding paragraphs as if fully incorporated herein.

85. The Defendants represented to the Members of National Class 2 that if they paid $19, that AshleyMadison.com would delete all account date and correlating personal and financial information. Such representations were false at the time they were made. The Defendants knew said representations were false and the representations were made in order to induce the Plaintiff to pay monies to erase their account.

86. As a result of the fraud and misrepresentation of the Defendants, the Members have lost the benefit of the bargain and have been further damaged by recent data/security breach.

87. WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount of compensatory and punitive damages to be determined by a jury at a trial of this cause.

## JURY TRIAL DEMANDED

Plaintiffs and the putative class members demand a jury trial as to all claims and issues triable of right by a jury.

## PRAYER FOR REILIEF

WHEREFORE, Plaintiff and the Members of the proposed Classes pray that this Court do the following:

A. Certify the instant action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and order that notice be provided to all Class Members;

B. Designate Plaintiffs as representative of the Classes and the undersigned counsel as Class Counsel;

C. Award Plaintiffs and the Classes compensatory and punitive damages in an amount to be determined by the tier of fact;

D. Award Plaintiffs and the Classes statutory interest and penalties;

E. Award Plaintiffs and the Classes appropriate injunctive and/or declaratory relief;

F. Award Plaintiffs and the Classes their costs, prejudgment interest, and attorneys fees; and

G. Any further relief the Court deems just.

Respectfully Submitted,

s/Thomas E. Baddley, Jr.
THOMAS E. BADDLEY, JR.

          s/Jeffrey P. Mauro
          JEFFREY P. MAURO


          s/John Parker Yates
          JOHN PARKER YATES

BADDLEY & MAURO, LLC
850 Shades Creek Parkway, Ste. 310
Birmingham, AL 35209
205-939-0090
tbaddley@baddleymauro.com
jpmauro@baddleymauro.com
jpy@baddleymauro.com



Defendants' address:

Avid Life Media, Inc.
Avid Dating Life, Inc.
20 Eglinton Avenue West
Ste. 1200, Box 2055
Toronto, On M4R 1K8